# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **CLEAR BLUE INSURANCE COMPANY,** *Plaintiff* § § § | |
| **v.** § § | |
| **HECTOR FERNANDEZ, JUANA PURA MALDONADO DE GARCIA, MARTE FUENTES GOMEZ,** *as Heir of Anabella Garcia, Decedent, and as Representative of the Estate of and Next Friend of M.M., M.F., and M.F., Minor Children,* **and F&I ENTERPRISES, INC.,** *Defendants* § § § § § § § § § | Case No. 1:22-CV-00038-RP |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion for Summary Judgment Against Defendants, filed May 6, 2022 (Dkt. 12); Defendant Juana Maldonado De Garcia's Response to Plaintiff's Motion for Summary Judgment, filed May 20, 2022 (Dkt. 13); Plaintiff's Reply to Defendant Juana Maldonado De Garcia's Response, filed June 1, 2022 (Dkt. 15); Defendant Hector Fernandez's Response to Plaintiff's Motion for Summary Judgment, filed August 19, 2022 (Dkt. 16); and Plaintiff's Reply to Defendant Hector Fernandez's Response, filed August 29, 2022 (Dkt. 19). By Text Order entered December 22, 2022, the District Court referred the Motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

## I. Background

On July 18, 2019, Plaintiff Clear Blue Insurance Company ("Clear Blue"), an Illinois company, issued Defendant F&I Enterprises, Inc. ("FIE"), a Texas trucking company, a commercial auto insurance policy for the policy period July 11, 2019 to July 11, 2020. Dkt. 12-1 at 3-79 ("Policy"). The Policy provides that Clear Blue has "a right and duty to defend" FIE in covered lawsuits, and that Clear Blue "will pay all sums [FIE] legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." *Id.* at 25. Relevant here, the Policy also contains a "Limit Of Insurance" provision limiting coverage for "any one 'accident'" to $1 million. *Id.* at 28.

On December 3, 2019, one of FIE's tractor-trailers was involved in a collision with two other vehicles on U.S. Highway 281 in Brooks County, Texas. The drivers and passengers of the other vehicles ("Underlying Plaintiffs") allege that FIE employee Joe Jackson tried to back a tractor-trailer owned by FIE into Galvan Towing/JV Towing's private driveway on the west side of Highway 281. Dkt. 12-4 at 4. Jackson could not put the transmission into reverse and allegedly "yelled out" to his passenger and fellow employee Sedrick Lamar Smith ("Smith") to assist him. *Id.* Smith allegedly took over operating the vehicle and attempted to put it in reverse. *Id.* The Underlying Plaintiffs allege that during this time, "the tractor-trailer was positioned perpendicular to Highway 281 and covered the entirety of the northbound lanes, the unprotected median, and the southbound lanes of Highway 281," which "blocked and obstructed the roadway and the path of motorists." *Id.*

While Smith was trying to back up the tractor-trailer into the driveway, Anabelia Garcia, who was driving northbound on Highway 281, crashed her van into its passenger side. Dkt. 8-2 at 3. Garcia died in the collision. Dkt. 12 at 5. Garcia's three young children and Juana Pura Maldonado

2

De Garcia, all passengers in Garcia's van, survived. *Id.* Plaintiff Hector Fernandez alleges that Smith and Jackson helped the passengers out of Garcia's van, but "failed to take any additional actions to prevent another impact." Dkt. 12-4 at 4. A few minutes later, Fernandez, who also was driving his tractor-trailer northbound on Highway 281, crashed into the right side of the FIE tractor-trailer. *Id.*

On January 7, 2020, Fernandez filed a negligence lawsuit against FIE, Smith, Jackson, and Galvan Towing in Brooks County District Court. *Fernandez v. F&I Enters.*, No. 10-01018178-CV (79th Dist. Ct., Brooks Cnty., Tex. Jan. 7, 2020) (Dkt. 12-4). De Garcia subsequently intervened in Fernandez's suit. Dkt. 12-5. Fernandez and De Garcia's lawsuit is set for jury trial in September 2023.[1] On June 16, 2020, Garcia's surviving husband, Marte Fuentes Gomez, filed a separate negligence lawsuit, on behalf of his deceased wife and her children, in Nueces County, Texas. *Gomez v. F&I Enter.*, No. 2020-cv-60868-4 (Co. Ct. at Law No. 4, Nueces Cnty., Tex. June 16, 2020) (Dkt. 8-2). Gomez's lawsuit is set for jury trial in August 2023.[2]

On January 14, 2022, Clear Blue filed this declaratory judgment action under 28 U.S.C. § 2201, seeking a declaration that the claims asserted in the two pending state court lawsuits ("Underlying Lawsuits") against its client, FIE, are subject to a single policy limit of $1 million under the Policy. Original Complaint for Declaratory Judgment (Dkt. 1). Clear Blue argues that Garcia and Fernandez's two separate collisions with the FIE tractor-trailer should be considered a single "accident" under the Policy and therefore subject to the $1 million coverage limit.

---

[1] *See* https://eservices.countyofbrooks.com/eservices/searchresults.page. The Court takes judicial notice of state court dockets under Federal Rule of Evidence 201. *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (holding that district court may take judicial notice of state court docket); *see also Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995) (taking judicial notice of state court orders).

[2] *See* https://portal-txnueces.tylertech.cloud/PublicAccess/CaseDetail.aspx?CaseID=2681907.

On May 6, 2022, Clear Blue filed this Motion for Summary Judgment under Rule 56(c), asking the Court to "grant its Motion for Summary Judgment and rule as a matter of law that $1 million is the maximum available coverage for all claims against its insured." Dkt. 12 at 11. Defendants De Garcia and Fernandez[3] oppose the Motion, arguing that summary judgment on Clear Blue's duty to indemnify FIE is premature because the Underlying Lawsuits are pending in state court.

## II.    Applicable Legal Standards

### A.  28 U.S.C. § 2201

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C § 2201(a)). When considering a declaratory judgment action, a district court engages in a three-step inquiry. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The court must ask: (1) "whether an 'actual controversy' exists between the parties"; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* The statute's requirement of a "case of actual controversy" refers to an Article III case or controversy. *MedImmune*, 549 U.S. at 126. The party moving for a declaratory judgment bears the burden of pleading facts showing the existence of a justiciable controversy. *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293-94 (5th Cir. 2019).

### B.  Rule 56

Summary judgment will be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact

---

[3] Defendants FIE and Marte Fuentes Gomez did not respond to the Motion for Summary Judgment. Also, although FIE was served on February 9, 2022, it has not filed an answer or otherwise responded to this lawsuit.

and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### C. Texas Insurance Law

When federal jurisdiction is based on diversity of citizenship, as in this case, federal courts look to the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). Therefore Texas law governs this diversity action and informs the Court's interpretation of the Policy.

The principles courts use when interpreting an insurance policy under Texas law are well established. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). "Insurance policies are interpreted under the rules of construction that apply to contracts in general. The primary goal of contract construction is to effectuate the parties' intent as expressed in the contract." *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 198-99 (Tex. 2022). A court begins its analysis "with the language of the contract because it is the best representation of what the parties mutually intended. Unless the policy dictates otherwise, we give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citations omitted).

An insurer owes two "distinct and separate duties": the duty to defend the insured against lawsuits and the duty to indemnify the insured against claims and judgments. *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 742 (Tex. 2009). Whether a lawsuit activates an insurer's duty to defend is controlled by the "eight-corners rule." *State Farm Lloyds v. Richards*, 966 F.3d 389, 392 (5th Cir. 2020). "And under Texas's well-established eight-corners rule, an insurer's 'duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy.'" *Id.* (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009)).

The duty to indemnify, by contrast, "is determined by the facts that are eventually ascertained in the underlying lawsuit." *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016). "This usually means waiting to resolve the duty to indemnify until after a trial in the underlying litigation because facts established at trial determine the duty to indemnify." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 314 (5th Cir. 2021) (cleaned up).

### III.   Analysis

Clear Blue does not dispute that it has a duty to defend FIE in the Underlying Lawsuits. Instead, Clear Blue argues that its duty to indemnify FIE against the Underlying Plaintiffs' claims is limited to $1 million under the Policy because Garcia's initial collision with the FIE tractor-trailer and Fernandez's subsequent collision with the FIE tractor-trailer should be considered a single "accident" under the Policy.

The Policy requires Clear Blue to defend and indemnify FIE in covered lawsuits by paying "all sums" FIE "legally must pay as damages" because of bodily injury or property damage "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Dkt. 12-1 at 25. Clear Blue argues that the following Limit Of Insurance section in the Policy limits the Underlying Plaintiffs' claims to $1 million in total coverage for all their claims:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations [$1 million].
>
> All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

*Id.* Dkt. 12-1 at 28-29. "Accident" is defined as "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" *Id.* at 33.

7

The Fifth Circuit analyzed an identical limit of insurance provision in *Evanston Ins. Co. v. Mid-Continent Cas. Co.*, 909 F.3d 143 (5th Cir. 2018). In that insurance coverage dispute, the underlying defendant's Mack truck negligently struck five different cars in ten minutes on a highway in Houston. *Id.* at 144. The underlying plaintiffs filed several lawsuits in state court and all entered into multi-million-dollar settlements. *Id.* The truck's primary insurer refused to contribute more than $1 million toward settlement of the final three collisions, claiming that they were part of a single "accident" under its policy and that $1 million was the primary insurer's limit of liability per accident. *Id.* The excess insurer sued the primary insurer in federal court. *Id.* The parties stipulated to the facts and filed cross-motions for summary judgment as to whether the final three impacts constituted a single "accident" or separate "accidents" under the policy and Texas law. *Id.* The district court held that two accidents occurred. On appeal, the Fifth Circuit reversed, finding that there was only one accident. The Fifth Circuit clarified that under Texas law:

> the appropriate inquiry is whether there was one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage. If so, then there was a single occurrence. If the chain of proximate causation was broken by a pause in the negligent conduct or by some intervening cause, then there were multiple occurrences, even if the insured's negligent conduct which caused each of the injuries was the same kind of negligent conduct.

*Id.* at 150. On the stipulated facts[4] before it, the court concluded that there was only one accident under the policy because:

> The ongoing negligence of the runaway Mack truck was the single "proximate, uninterrupted, and continuing cause" of all the collisions. After all, the parties agree that [the driver of the Mack truck] did not apply the brakes at any time from first striking the Accord until all the vehicles came to rest.

*Id.* at 151.

---

[4] *See id.* at 144 ("Since the case was submitted below on a stipulation, there is no dispute as to the material facts.").

Clear Blue argues that the *Evanston* analysis limits its coverage "to a single $1 million limit because the undisputed facts demonstrate that all of the Claimants' claims result from a single cause and liability triggering event," that is, the FIE employees' "failure to back safely into the private driveway, so that the tractor-trailer obstructed all traffic, resulting in both collisions." Dkt. 12 at 5, 12. Therefore, Clear Blue argues, this Court should issue a declaratory judgment that all of the Underlying Plaintiffs' claims against FIE are limited to $1 million.

The Court finds that Clear Blue cannot rely on *Evanston* and its other cited authority because, unlike in those cases, the Underlying Lawsuits in this case remain pending and FIE's liability has not been conclusively determined. Therefore, it would be premature for the Court to issue a declaratory judgment as to Clear Blue's duty to indemnify FIE.

A federal court may not issue a declaratory judgment unless an "actual controversy" exists; in other words, there must be a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests. *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). "An actual case or controversy exists before the resolution of an insured's underlying suit concerning the insurer's **duty to defend**." *Columbia Cas. Co. v. Georgia & Fla. RailNet, Inc.*, 542 F.3d 106, 110 (5th Cir. 2008). An insurer's **duty to indemnify**, in contrast, "generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Peachtree Const.*, 647 F.3d at 253; *see also Hartford Cas.*, 827 F.3d at 430 (stating that "the duty to indemnify typically cannot be adjudicated until there has been a judgment in the underlying suit because facts proven at trial may differ slightly from the allegations"). "This is because, unlike the duty to defend, which turns on the pleadings, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy." *Peachtree Const.*, 647 F.3d at 253.

9

There are two limited exceptions to the rule that courts consider the duty to indemnify justiciable only after the underlying suit is concluded. First, "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." *Farmers Texas County Mut. Ins. Co. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). Second, courts have allowed parties to "offer extrinsic evidence to prove or negate the insurer's duty to indemnify if the underlying lawsuit never goes to trial or if trial does not develop the facts necessary to determine policy coverage." *Hartford Cas.*, 827 F.3d at 430 (citing *D.R. Horton-Texas*, 300 S.W.3d at 743).

Neither of these exceptions is applicable here. Therefore, Clear Blue's duty to indemnify FIE is not ripe for adjudication. *See Penn-Am. Ins. Co. v. Tarango Trucking, L.L.C.*, 30 F.4th 440, 448 (5th Cir. 2022) (reversing district court's ruling that insurer had no duty to indemnify insured in underlying action where underlying suit had not concluded and insurer had a duty to defend, finding that "it was premature for the district court to decide the indemnity issue"); *Fed. Ins. Co. v. Northfield Ins. Co.*, No. 4:14-CV-0262, 2017 WL 11633133, at *22 (S.D. Tex. Nov. 15, 2017) (holding that insurer's duty to indemnify was not ripe for adjudication where liability had not been conclusively determined in the underlying suit and no exception applied); *Canal Ins. Co. v. XMEX Transp., LLC*, 1 F. Supp. 3d 516, 530-31 (W.D. Tex. 2014) (holding that under both Texas and Tennessee law "the Court may at this time rule on the duty to defend, based only on the allegations in the state court pleadings and the language of the Policy, but may not rule on the duty to indemnify until the State Court Litigation has concluded").

Unlike in *Evanston*, the Underlying Plaintiffs do not stipulate that FIE's negligence in blocking the highway was the single "proximate, uninterrupted, and continuing cause" of both collisions. *Evanston*, 909 F.3d at 151. The Underlying Plaintiffs point out that one of the police reports

10

> expressly credits "the inoperative state of the units involved in the previous crash" as a contributing factor in the second crash; the occurrence of this first wreck may have been a new and intervening cause of the second wreck, to say nothing of the potential for contributory negligence by either of the oncoming drivers.

Dkt. 13 at 6 (quoting Dkt. 12-3 at 3). Thus, Defendants argue that in the Underlying Lawsuits,

> FIE may contend that the first wreck was proximately caused by the negligence of Anabelia Garcia (the driver of the van that initially struck FIE's vehicle), that the second wreck was proximately caused by some combination of negligence by Anabelia Garcia and Hector Fernandez (the driver of the truck that subsequently struck FIE's vehicle), and that these alternative, independent causes interrupt the chain of causation between FIE's vehicle blocking traffic and the wrecks themselves.

*Id.* at 7. The state court juries may agree or disagree. But it is those juries who must resolve those fact questions, not this Court on summary judgment. *See Hartford Cas. Ins.*, 827 F.3d at 431 (holding that it was error for the district court to grant summary judgment to insurer on duty to indemnify where the allegations in the underlying lawsuits did not conclusively foreclose that facts adduced at trial may show a duty to indemnify).

Because the Underlying Lawsuits have not been resolved, Clear Blue's duty to indemnify FIE is not ripe for adjudication and the Court should abate consideration of the duty to indemnify until after the underlying litigation has been concluded. *See Northfield Ins.*, 2017 WL 11633133, at *24 (stating that it is appropriate to stay, rather than dismiss, declaratory judgment actions over an insurer's duty to indemnify until the litigation concludes) (collecting cases). Accordingly, Clear Blue's Motion for Summary Judgment should be denied without prejudice to refiling after the underlying litigation has been fully resolved.

## IV. Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **DENY without prejudice** Plaintiff Clear Blue Insurance Company's Motion for Summary Judgment (Dkt. 12).

11

It is **FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 17, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE